IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Micah Israel, | ) | |
| | ) | C.A. No. 7:11-793-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| Prudential Insurance Company of America; and Lockheed Martin Corporation, | ) ) ) | |
| Defendants. | ) | |
| | ) | |

This case arises out of a group life insurance contract. Plantiff Micah Israel (Israel) filed the complaint against defendants Prudential Insurance Company of America (Prudential) and Lockheed Martin Corporation (Lockheed) (collectively, the defendants) seeking to recover life insurance benefits under a group life insurance plan. The court held a hearing on the pending motions on June 19, 2012. (Dkt. No. 62.) Before the court are Israel's first motion to amend/correct complaint (Dkt. No. 20), his motion for summary judgment (Dkt. No. 21), and his second motion to amend/correct complaint (Dkt. No. 27). Also before the court are the defendants' motion for summary judgment (Dkt. No. 17) and motion to strike (Dkt. No. 34). For the reasons set forth below, the court grants Israel's second motion to amend/correct his complaint (Dkt. No. 27) and grants in part and denies in part his motion for summary judgment (Dkt. No. 21). The court denies the defendants' motion to strike (Dkt. No. 34) and grants in part and denies in part the defendants' motion for summary judgment. (Dkt. No. 17).[1]

**I.**

Israel is an employee of Lockheed in Spartanburg, South Carolina. As part of its benefits

---

[1] Israel's first motion to amend/correct his complaint is denied as moot, in light of his second motion to amend. (Dkt. No. 20.)

package offered to employees, Lockheed offers a group life insurance policy. Since January 2010, Prudential has been the administrator of that plan.

During his employment with Lockheed, Israel elected to participate in the plan and selected term life insurance to cover his wife, Jennifer Israel (Ms. Israel). Under the terms of the plan, a spouse is eligible for coverage as a "qualified dependent." However, coverage ceases when the covered individual ceases to be a qualified dependent. Under the terms of the policy, divorce is a disqualifying event.

Israel and his wife separated prior to September 2009. In November 2009, Israel allegedly called someone within Lockheed's benefits department to discuss changes to his various benefits.[2] Israel asserts that he informed Lockheed at this point of his separation and impending divorce and sought to end his wife's dental, vision, and health insurance coverage. He also asserts that he informed Lockheed that he preferred to continue the group life insurance policy on his wife for the benefit of his children. Israel alleges that Lockheed informed him at this point that he could continue the group life coverage on his wife through the separation and after the divorce.[3]

Israel's divorce was finalized on April 14, 2010. Israel claims that he informed Lockheed on that day—by virtue of informing his supervisors—that his divorce was final. On July 10, 2010, Ms. Israel passed away under unfortunate circumstances. Israel made a claim for life

---

[2] In his original affidavit, Israel asserted that he spoke to someone with Prudential in November 2009. (Dkt. No. 27-2.) The defendants noted that Prudential did not begin to administer Lockheed's group life insurance plan until January 2010. At that point, Israel submitted an amended affidavit alleging he spoke with someone in Lockheed's benefits department. (Dkt. No. 44-1.) At the June 19, 2012 hearing and in its submissions, Lockheed asserts that it contracted out its benefits management to a third-party, making it unlikely Israel would have actually spoken to someone within Lockheed's benefits department.

[3] As will be discussed further below, the defendants vigorously dispute that this conversation ever took place. Lockheed asserted at the hearing that the third-party administrator maintains records of phone calls and has no record of any calls from Israel.

insurance benefits shortly after his ex-wife's death, which was denied by Prudential.[4] Until after Israel's claim, and during the separation and divorce, the defendants continued to deduct premiums from Israel's paychecks. Prudential denied the claim on October 4, 2010, stating that Ms. Israel was no longer an eligible dependent due to the divorce, and denied reconsideration on January 14, 2011. Israel filed his complaint in the South Carolina circuit court on February 24, 2011, which was removed by the defendants on April 1, 2011. (Dkt. No. 1.)

In his initial complaint, Israel sought relief under the Employment Retirement Income Security Act (ERISA), codified at 29 U.S.C. § 1001, *et seq.* (2012). Specifically, he asserted a claim for policy benefits and attorneys' fees/costs under § 1132.[5] In addition, Israel asserted state law claims for negligence/gross negligence and negligent misrepresentation. Subsequently, Israel moved to amend his complaint. (Dkt. No. 20.) In the proposed amended complaint, Israel sought to include causes of action under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3) and drop the state law causes of action. Israel also filed a motion for summary judgment, seeking full return of the wrongfully withheld premiums and attorneys' fees. (Dkt. No. 21.) Shortly thereafter, Israel submitted a second motion to amend. (Dkt. No. 27).[6] In the proposed second amended complaint, Israel asserts causes of action for:

(1) policy benefits and attorneys' fees/costs under ERISA;

(2) death benefits under § 1132(a)(1)(B) and attorneys' fees/costs under § 1132(g);

(3) return of premiums for breach of fiduciary duty under § 1132(a)(3);

---

[4] Israel claims the disputed insurance benefits amount to $141,000, while the defendants assert the benefits only amount to $97,000.

[5] As the defendants point out, Israel's complaint attempts to assert a claim under § 1001, which does not provide a cause of action for recovering policy benefits. Instead, a claim for policy benefits must be brought under § 1132.

[6] In light of Israel's second motion to amend his complaint, his first motion to amend is denied as moot. (Dkt. No. 20.)

(4) equitable relief (reformation) under § 1132(a)(3);

(5) equitable relief (estoppel) under § 1132(a)(3); and

(6) equitable relief, seeking return of premiums, under § 1132(a)(3).

The second amended complaint primarily seeks to add the causes of action for equitable relief, in light of the Supreme Court's decision in *Cigna Corporation v. Amara*, 131 S. Ct. 1866 (2011). In return to these documents, the defendants filed a motion for summary judgment (Dkt. No. 17); a motion in opposition to Israel's second motion to amend (Dkt. No. 37); and a motion to strike materials outside the administrative record (Dkt. No. 34). The court will address these motions accordingly.

## II.

Under the Federal Rules of Civil Procedure, a party may amend a pleading, in the absence of consent by the opposing party, "only with . . . the court's leave," and the court "should freely give leave when justice so requires." Rule 15(a)(2), Fed. R. Civ. P. However, a court "may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Rule 56, Fed. R. Civ. P. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party, of course, bears the initial

burden in showing the court that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323. Following this initial showing, the nonmoving party must produce "specific facts showing that there is a genuine issue for trial." *Id.* at 322. To do so, the nonmoving party must present more than a mere scintilla of evidence that a genuine issue of material fact exists. *Anderson*, 477 U.S. at 252. The court construes all facts and reasonable inferences arising therefrom in a light most favorable to the nonmoving party. *EEOC v. Central Wholesalers, Inc.*, 573 F. 3d 167, 174 (4th Cir. 2009).

### III.

Israel's remaining claims are governed by the ERISA statute, codified at 29 U.S.C. § 1001, *et seq.* (2012). Under ERISA, a person may bring an action under § 1132(a)(1)(B) "to recover benefits due to him under the terms of his plan," or "to enforce his rights under the terms of the plan." A person may also bring an action under § 1132(a)(3) "to enjoin any act or practice which violates any provision of this subchapter of the terms of the plan," to "obtain other equitable relief . . . to redress such violations or . . . to enforce any provisions of this subchapter or the terms of the plan . . . ." Finally, under § 1132(g), "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Israel seeks relief under each of the statutory sections.

### IV.

### A.

The court will first address Israel's second motion to amend and the defendants' motion to strike in concert. This approach is necessary because the issues that arise from these motions are interrelated and dependent upon one another. Pursuant to the reasoning below, the court denies the defendants' motion to strike and grants Israel's second motion to amend.

In the motion to strike, the defendants argue that Israel should not be permitted to submit new evidence contained in his supplemental affidavit, namely the evidence surrounding the alleged November 2009 phone call, because he did not introduce this evidence into the administrative process. Admission of new evidence in an ERISA case is controlled by the Fourth Circuit Court of Appeals' opinion in *Quesinberry v. Life Insurance Co. of North America*, 987 F.2d 1017 (4th Cir. 1993). In that case, the court adopted "a scope of review that permits the district court in its discretion to allow evidence that was not before the plan administrator." *Id*. at 1025. Further, the court stated that the "district court should exercise its discretion, however, only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision." *Id*. The Fourth Circuit identified "exceptional circumstances that may warrant an exercise of the court's discretion to allow additional evidence" as

> claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process. 1026-27

*Id*. at 1027. However, the list provided above "is not exhaustive but is merely a guide . . . ." *Id*.

Here, the court will allow the additional evidence. Granted, Israel's justification for failure to include this evidence in the administrative hearing process is less than robust. In its response to the defendant's motion to strike, Israel states that the administrative review process was limited, and he was denied the opportunity to testify—

both accounts denied by the defendants. Further, counsel for Israel indicated at the hearing that he did not include this information during the administrative review process because he did not see its relevance to that process. However, in light of the Supreme Court's decision in *Cigna Corporation v. Amara*, 131 S. Ct. 1866 (2011) and the Fourth Circuit's interpretation of *Amara* in *McCravy v. Metropolitan Life Insurance Co.*, Nos. 10-1074, 10-1131, 2012 WL 2589226, (4th Cir. July 5, 2012), the issue of equitable relief is now present in this case. The facts alleged in the supplemental affidavit go to the heart of the equitable relief issue. Therefore, the court finds the "circumstances clearly establish that [this] additional evidence is necessary" to determine the outcome in this case. *Quesinberry*, 987 F.2d at 1025.

**B.**

Turning now to Israel's second motion to amend, the court grants the motion. As stated above, a motion to amend should be granted "when justice so requires." Rule 15(a)(2), Fed. R. Civ. P. Here, justice so requires.

In the back-and-forth surrounding Israel's second motion to amend, both parties debated the meaning of the Supreme Court's opinion in *Amara*, 131 S. Ct. 1866, which was published in May of 2011, several months after the filing of this complaint. Israel argues that *Amara* allows him to pursue new avenues of equitable relief, while the defendants argue that *Amara* has no bearing on possible avenues of relief in this case.

Fortunately, the Fourth Circuit analyzed *Amara* in *McCravy,* 2012 WL 2589226, which was published on July 5, 2012. The Fourth Circuit stated, "[T]he United States Supreme Court recently made clear that Section 1132(a)(3) allows for remedies traditionally available at equity . . . ." *Id*. at *3. Those remedies were at the heart of the plaintiff's case in *McCravy*, and they are at

the heart of the plaintiff's case here.

In that case, the plaintiff purchased life insurance for her daughter, but when her daughter unfortunately passed away, the plan administrator denied the claim. Upon filing a claim, the plaintiff discovered that her daughter was ineligible for coverage. However, as is alleged in our case here, the plaintiff alleged that she was told by agents of the defendant that her daughter was covered, and the defendant continued to accept premiums for the coverage. The plaintiff sought to bring claims for equitable relief under § 1132(a)(3).

The Fourth Circuit, in agreeing with the plaintiff, stated, "[T]he portion of *Amara* in which the Supreme Court addressed Section 1132(a)(3) stands for the proposition remedies traditionally available in courts of equity . . . are indeed available to plaintiffs suing fiduciaries under Section 1132(a)(3)." *Id.* at *4; *see also id.* at *5 (stating that equitable estoppel is a traditional equitable remedy available under § 1132(a)(3).

Now indisputably, the Supreme Court and the Fourth Circuit have held that equitable relief is available to a plaintiff pursuing a claim under § 1132(a)(3). In light of this new controlling case law, the court will grant Israel's request to amend his pleading to include these claims for equitable relief. Furthermore, the court finds that the defendants will not be prejudiced, that Israel has not acted in bad faith, and that the amendment is not futile. *Equal Rights Center v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

## IV.

### A.

The court will now turn to the competing motions for summary judgment. Israel's motion for summary judgment is granted in part and denied in part.

In his motion for summary judgment, Israel seeks a determination that the defendants breached their fiduciary duties under § 1132(a)(3) by improperly retaining the premiums paid for a policy that did not provide coverage and not returning those premiums in a timely manner. He also seeks attorneys' fees under § 1132(g). According to representations made by counsel for all parties at the hearing, all premiums paid have been refunded. Thus, Israel has obtained the primary relief he seeks in his motion for summary judgment. That part of the motion is granted. While Israel may be entitled to attorneys' fees under § 1132(g) for the cost of bringing this action to obtain a refund of premiums, the court will hold this issue in abeyance for determination at such time as the remainder of the case is resolved on the merits. Thus, the court denies summary judgment at this time as to attorneys' fees.

**B.**

The court will now turn the defendants' motion for summary judgment. The court will construe this motion as inclusive of all claims Israel asserts in the second amended complaint. The parties' briefings are comprehensive and responsive as to all issues and claims. In their motion, the defendants seek summary judgment as to all of Israel's remaining claims, including his § 1132(a)(1(B) benefits claim and his § 1132(a)(3) claims for equitable relief.[7] The defendants' motion for summary judgment is granted in part and denied in part.

As to Israel's ERISA claim for life insurance benefits under §1132(a)(1)(B), the defendants argue that this claim is barred by the terms of life insurance plan at issue. The court agrees. The plan states that coverage may be purchased for certain dependents; and policy language provides that a spouse is a qualified dependent eligible for insurance coverage under the terms of the plan. However, coverage for a dependent ends "when the person ceases to be a

---

[7] The motion for summary judgment also asserts that the state law claims asserted in the original complaint are preempted by ERISA. As the court has granted Israel's second motion to amend, those claims no longer exist. That portion of the motion is therefore moot.

Qualified Dependent." Non-spouses are not listed among those who are eligible for coverage as qualified dependents. Further, the plan states that coverage will remain in place unless the employee experiences a "qualified status change." Divorce is a qualified status change rendering the formerly eligible dependent ineligible for coverage.[8] As is undisputed, Israel's divorce was final on April 14, 2010. At that point, his ex-wife no longer qualified for coverage as a qualified dependent. When Ms. Israel died in July 2010, she was no longer a qualified dependent under the plan. Thus, the defendants properly denied policy benefits under the plan. The court grants summary judgment to the defendants as to this claim.[9]

However, the court denies summary judgment to the defendants as to Israel's claims for equitable relief. As stated above, the Supreme Court and the Fourth Circuit Court of Appeals have held that equitable relief is available to an ERISA plaintiff under § 1132(a)(3). *See Cigna Corporation v. Amara*, 131 S. Ct. 1866 (2011); *McCravy v. Metropolitan Life Insurance Co.*, Nos. 10-1074, 10-1131, 2012 WL 2589226 (4th Cir. July 5, 2012). Israel's claims for equitable relief under § 1132(a)(3) require intensive factual determinations. In particular, a finder of fact must make determinations as to the factual issues surrounding the alleged November 2009 phone call and whether he was reliably informed that coverage would continue post-divorce. As noted above, despite Israel's assertions, the defendants allege that the third-party benefits administrator has no record that any call took place. Furthermore, Israel alleges that he never received a copy of the summary plan document (SPD) or the policy language that would have put him on notice as to the policy terms. At the June 19 hearing, the court asked the defendants' counsel if Israel

---

[8] The plan provided a 30-day window to convert the policy following a qualified status change. It is undisputed that Israel did not convert the policy within that window.

[9] In his response to the defendants' motion for summary judgment, Israel asserts that he was never given a copy of the policy and was unaware of its language. This dispute goes to his claims for equitable relief, not his claim for benefits under the terms of the policy.

was ever provided with a copy of the SPD and if they could produce evidence indicating as much. The defendants filed a declaration indicating that he "would have" received a copy in 2006 and/or 2008 and that the SPD was available on the Lockheed benefits website; however, they could not produce evidence indicating as much.[10] Accordingly, that issue is also an issue of fact.[11] Thus, these issues must be resolved by a finder of fact.

In sum, these issues constitute genuine issues of material fact and a determination as to their veracity is therefore inappropriate at the summary judgment stage. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (stating that the moving party has the burden of showing there are no genuine issues of material fact and that he is entitled to judgment as a matter of law); *EEOC v. Central Wholesalers, Inc.*, 573 F. 3d 167, 174 (4th Cir. 2009) (stating that the court should construe all facts in a light most favorable to the non-moving party). Accordingly, summary judgment is denied as to the claims for equitable relief.

### IV.

In accordance with the above reasoning, Israel's second motion to amend/correct his complaint is **GRANTED**. (Dkt. No. 27.) Israel's motion for summary judgment is **GRANTED** in part and **DENIED** in part. (Dkt. No. 21.) the defendants' motion to strike is **DENIED**. (Dkt. No. 34.) The defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part (Dkt. No. 17.). Israel's first motion to amend is **DENIED** as **MOOT**. (Dkt. No. 20.)

---

[10] While the defendants could not provide evidence supporting that contention, the court is curious as to how either of those documents would even be relevant, given that Prudential did not become the plan administrator until January 2010, especially in light of this language from the defendants: "The SPD is entirely congruous summary of the Prudential plan, and includes the relevant information including eligible dependents, when coverage for dependents begins/ends, conversion rights, etc." What remains to be seen is how an SPD received in 2006 or 2008 would be a summary of the Prudential plan effective January 2010.

[11] Furthermore, as the Fourth Circuit noted in *McCravy*, "'[S]ummary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not themselves constitute the *terms* of the plan . . . .'" 2012 WL 2589226 *5 n. 5 (quoting *Amara*, 131 S. Ct at 1878) (emphasis in original). The defendants have not provided evidence suggesting the actual terms of the plan were ever communicated to Israel, beyond the SPD.

**IT IS SO ORDERED.**

                                                s/ Timothy M. Cain
                                                United States District Judge

Greenville, South Carolina
July 31, 2012